IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COTTON PATCH CAFÉ, INC.          *

       Plaintiff          *

         vs.          *   CIVIL ACTION NO. MJG-09-3242

MICROS SYSTEMS, INC.          *

       Defendant          *

*          *          *          *          *          *          *          *          *

MEMORANDUM AND ORDER RE: RECONSIDERED MOTIONS

The Court has before it, for reconsideration,[1] the following motions:

1. Defendant's Motion for Summary Judgment [Document 60].

2. Plaintiff Cotton Patch Café, Inc.'s Motion to Exclude the Expert Testimony of James T. Walsh [Document 65].

3. Plaintiff Cotton Patch Café, Inc.'s Motion to Strike Evidence in Support of Micros Systems, Inc.'s Motion for Summary Judgment and Brief in Support [Document 82].

4. Plaintiff Cotton Patch Café, Inc.'s Motion to Strike Evidence Attached to Defendant Micros Systems, Inc.'s Opposition to Motion to Strike and Reply to Cross-Motion for Summary Judgment and Opposition to Evidentiary Objections in Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Brief in Support [Document 111].

_____

[1] See Order of March 30, 2012 [Document 136].

The Court has reviewed the materials submitted by the parties relating to the instant motions, including the supplemental briefing materials.  The Court has held a hearing on the instant motions prior to the filing of supplemental briefing and finds no need for a further hearing.

I.   BACKGROUND

A.   Factual Background[2]

At all times relevant hereto, Plaintiff, Cotton Patch Café, Inc.[3] ("Cotton Patch") owned a chain of restaurants in Texas and New Mexico, and Defendant, Micros Systems, Inc.[4] ("Micros") manufactured and sold Point-of-Sale ("POS") systems[5] to the hospitality industry.

In 1997, Cotton Patch began purchasing Micros POS systems to replace the existing older Panasonic systems in its restaurants.  In May 2001, Cotton Patch purchased a Micros model 3700 POS system for the Nacogdoches restaurant that was installed in June 2001.  At this time, Cotton Patch also

---

[2] The statement of "facts" herein is primarily based on Plaintiff's view of the evidence and is not necessarily accepted as correct by the Defendant.
[3] A Texas corporation.
[4] A Maryland corporation.
[5] POS systems are comprised of computer hardware and software that provide electronic cash register and credit/debit card processing services.

purchased one year of "Help Desk" support and maintenance for the system but did not renew the support contract when it expired in June 2002.

In December 2002, Cotton Patch purchased from Micros, a one-year Software Enhancement License ("SEL") for four locations, including Nacogdoches.  Under the SEL, Micros was to provide software upgrades as new versions were developed and made available during that period.  The SEL was not renewed after the term expired.  Therefore, after December 2003, Cotton Patch purchased services and upgrades on a time and materials basis.

In 2003, Cotton Patch upgraded its restaurants from dial-up telephone connections on an as-needed basis to a persistent high-speed DSL internet connection for transmitting credit card information to the processing bank for authorization.  This change introduced potential security issues.

Around this time, credit card companies, including VISA, MasterCard, and American Express, were developing and issuing security practices for merchants who processed credit card transactions.  Micros began developing software patches to modify existing software as well as a new version of its software that would change the way credit card data was stored

by the POS system, in particular to avoid storing Full Track

Data[6] that enables counterfeiting.[7]

On January 23, 2006, Cotton Patch entered into a contract

with Micros ("the Sales Contract") for the purchase of a new

server ("the 2006 Server") for the POS system in its Nacogdoches

restaurant.  In March 2006, Micros installed the 2006 Server

with the then most current generally released software, Version

3.2,[8] which had the security feature of non-storage of Full Track

Data.  Around that time, Micros also made fixes to the Version

3.2 software on the 2006 Server to ensure that all printed

receipts and reports displayed properly masked credit card

numbers.[9]  However, the next month, April 2006, Micros' new

Version 4.0 of the software became available.  Version 4.0

encrypted credit card data, and was Payment Application Best

---

[6] The magnetic stripe on the back of a credit card contains two
"tracks" of data, both of which are required to process a credit
card transaction.  Track 1 includes the cardholder name, account
number, and expiry date.  Track 2 data includes additional
information such as the card verification value.  The data on
Tracks 1 and 2 together are referred to as "Full Track Data."
[7] A functional counterfeit credit card can be created with access
to both tracks of data but not with access to only one track.
[8] RES version 3.2, SP6 hf3.
[9] The Fair and Accurate Credit Transaction Act ("FACTA") required
the truncation or masking of credit card numbers, except for the
last five digits, and the credit card expiration date, on credit
card receipts by January 1, 2005.  15 U.S.C. § 1681c(g).

Practices ("PABP")[10] validated, but it was not installed on the 2006 Server.[11]

An unauthorized person (a "hacker") was able to access Full Track Data on the 2006 Server and the data was used to create fraudulent credit cards.  The evidence of record does not establish the method used by the hacker.

According to Cotton Patch's forensic expert, Roger Nebel, the 2006 Server contained malicious software ("malware") when it was installed, which malware provided a back door into the system and facilitated the hacker's ability to access credit card data. Nebel Dep. Vol. 2, Mar. 31, 2011, Pl.'s Opp'n Ex. 9.

According to Micros' forensic expert, there was no malware installed in March 2006, and no Full Track Data was stored in the system until May 2007.  At that time, a hacker was able to access the database software[12] and modify the database code. Walsh Dep. 346, Def's Mot. Summ. J. Ex. 2.  The hacker's

---

[10] VISA developed the PABP in 2005 to provide software vendors guidance in developing payment applications that help merchants mitigate compromises, and prevent storage of sensitive cardholder data (i.e., full magnetic stripe data) and support overall compliance with the PCI Data Security Standard ("PCI DSS").

[11] Micros contends that Version 4.0 would not have worked in the existing POS system in Nacogdoches without a full upgrade of all the hardware and workstations, at a much greater cost than the purchase of a new server.

[12] Micros contends that this was possible because Cotton Patch failed to take proper security measures.

modification allowed Full Track Data to be stored, facilitating the theft of Cotton Patch's customer credit card data.

Cotton Patch engaged a security assessor, Ambrion Trustwave ("Trustwave"), in November 2007 to conduct a forensic investigation of the 2006 Server.  Trustwave found some Full Track Data stored in the system and found evidence that the system contained malware that would allow unauthorized access.  Trustwave, however, was unable to determine how the POS system was compromised.  Shepard Dep. Vol. 1, Dec. 7, 2010, Pl.'s Opp'n Ex. 12.  Trustwave stated that malware infections occurred somehow[13] on three occasions in 2006 – March 18, March 23, and April 6 – and again in 2007 on May 18 and June 9.  Trustwave Report 18-19, Def's Mot. Summ. J. Ex. 46.

On August 23, 2007, Cotton Patch was notified by its credit card processing company that the Nacogdoches restaurant had been identified as a common source for credit card numbers used in a number of counterfeit credit card transactions.  Cotton Patch promptly replaced the 2006 Server with a new server containing the new PABP-validated version of Micros software.  Ultimately,

---

[13] The record does not establish the method by which this allegedly was accomplished.  Theories include exploitation of the absence of a properly configured firewall and access through PC Anywhere (software, part of the Micros system, that facilitates remote access for support).

Cotton Patch was fined some $227,000 by VISA and MasterCard and was required to pay chargebacks of some $27,000.

### B. Procedural Background

On December 19, 2008, Cotton Patch sued Micros on the claims presented herein in a Texas State Court.  In December 2009, the Texas trial court dismissed the case in reliance upon the forum selection clause in the Sales Contract.  Cotton Patch immediately filed the instant lawsuit[14] and also filed an appeal of the dismissal.  In March 2011, the Texas Court of Appeals affirmed the dismissal.[15]

In the pending Second Amended Complaint [Document 57], Cotton Patch presents its claims in five Counts:

One – Texas Deceptive Trade Practices Act

Two – Negligence

Three – Negligent misrepresentation

Four – Gross negligence

Five - Fraud by nondisclosure

By the instant motions, Cotton Patch seeks summary judgment on the claims asserted against it and seeks evidentiary relief as discussed herein.

---

[14] The Complaint was filed on December 7, 2009.
[15] See Cotton Patch Café, Inc. v. Micros Systems, Inc., No. 12-10-00030-CV, 2011 WL 743066 (Tex. App. Mar. 2, 2011).

II.   <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. <u>See,</u> <u>e.g.</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Crawford v.</u> <u>Formosa Plastics Corp.</u>, 234 F.3d 899, 902 (5th Cir. 2000).

The party moving for summary judgment bears the burden of proving no genuine issue of material fact exists. <u>Latimer v.</u> <u>Smithkline & French Labs.</u>, 919 F.2d 301, 303 (5th Cir. 1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the

nonmovant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. Id.  Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The evidence presented by the nonmovant must "support each essential element of its claims on which it will bear the burden of proof at trial." Munoz v. Orr, 200 F.3d 291, 302 (5th Cir. 2000).  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); see also Little, 37 F.3d at 1075 (noting that a non-movant's burden is "not satisfied with some metaphysical doubt as to the material facts").

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

III. <u>SUBSTANTIVE ISSUES</u>

In the Second Amended Complaint, Cotton Patch presents tort, not contract claims.  In the Memorandum Decision Re: Choice of Law [Document 137] the Court held that the substantive tort law of Texas, not Maryland, was applicable to Cotton Patch's claims.

The Court shall address the claims presented in three categories:

> (1)   Common law negligence-based claims.
>
> (2)   Common law misrepresentation/nondisclosure-based claims.
>
> (3)   Claims based on the Texas Deceptive Trade Practices Act.

A.   <u>Negligence-Based Claims (Counts Two and Four)</u>

Cotton Patch asserts negligence and gross negligence claims.  Micros seeks summary judgment on the ground that it owed no tort duty to Cotton Patch and that the "economic loss rule" prevents Cotton Patch from recovering any damages on its negligence claims.

To prove a cause of action based on negligence and gross negligence,[16] a plaintiff must show that the defendant breached a

_____

[16] To constitute gross negligence there must be a negligent act or omission that involves an extreme degree of risk and the

10

duty to exercise ordinary care that was owed to the plaintiff
and that the breach proximately caused the plaintiff's injury.
Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).
The threshold inquiry is whether a legal duty existed.  The
question of the existence of a legal duty is one of law to be
decided by the court based on the specific facts of the case.
Kukis v. Newman, 123 S.W.3d 636, 639 (Tex. App. 2003).  "A duty
can be assumed by contract or imposed by law."  J.P. Morgan
Chase Bank, N.A. v. Texas Contract Carpet, Inc., 302 S.W.3d 515,
530 (Tex. App. 2009)).

For present purposes, the Court must assume that the 2006
Server was negligently infected with malware.  The Court must
also assume that Micros failed to service the POS system with
care, skill, and reasonable expedience in light of prevailing
standards.  Certainly, the obligations of Micros at issue arose
from contracts[17] with Cotton Patch.  Thus Micros' duties to
Cotton Patch were based on their contractual relationship.

---

actor must have actual, subjective awareness of the risk
involved, but nevertheless proceed with conscious indifference
to the rights, safety, or welfare of others. Great Plains Trust
Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 314 (Tex.
2002)(citing Henderson v. Norfolk Southern Corp., 55 F.3d 1066,
1070 (5th Cir. 1995)).

[17] The service work, although not the subject of a written
service agreement, was performed pursuant to an agreement based
on a request for the service to be performed, the performance of
the service, and payment for the service.

It is well established in Texas law that negligent omission or commission relating to the performance of a contract is a tort as well as a breach of contract.  Montgomery Ward & Co. v. Scharrenbeck, 204 S.W.2d 508, 510 (Tex. 1947); see also Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991)("Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." (quoting Scharrenbeck, 204 S.W.2d at 510)). Accordingly, Cotton Patch presents cognizable tort claims in Counts Two and Four.

Micros contends that even if Cotton Patch may present tort claims, it is not entitled to recover by virtue of the "the economic loss doctrine."  See Dewayne Rogers Logging, Inc. v. Proprac Indus. Ltd., 299 S.W.3d 374, 382-83 ("a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim").  It has been stated in Texas decisions that a party asserting a negligence claim "must plead and prove either a personal injury or property damage as contrasted to mere economic harm." Express One Int'l, Inc. v. Steinbeck, 53 S.W.3d 895, 899 (Tex. App. 2001).  However, a review of Texas jurisprudence indicates

that this is an overly expansive statement and that the pertinent legal principles are nuanced.

It is well established that, under Texas law, a plaintiff who has suffered only economic loss may still obtain a tort recovery for certain torts such as negligent misrepresentation, legal or accounting malpractice, and fraud or fraudulent inducement. <u>Sharyland Water Supply Corp. v. City of Alton</u>, 354 S.W.3d 407, 418-19 (Tex. 2011) <u>Id.</u> at 418-19.  "Because the rule applies to a diverse range of situations, there is not one economic loss rule, but several."  <u>Id.</u> at 415 (quoting Jay M. Feinman, <u>The Economic Loss Rule and Private Ordering</u>, 48 Ariz. L. Rev. 813, 813 (2006)).

While the economic loss rule may not bar recovery for purely economic losses resulting from misrepresentation, recovery on a negligence-based claim is barred for an "economic loss."  In Texas, "economic loss" has been defined as

> damages for inadequate value, costs of
> repair and replacement of the defective
> product, or consequent loss of profits—
> without any claim of personal injury or
> damage to other property . . . as well as
> the diminution in the value of the product
> because it is inferior in quality and does
> not work for the general purposes for which
> it was manufactured and sold.

<u>Entergy Gulf States, Inc. v. Akrotex, Inc.,</u> 40 S.W.3d 201, 204 (Tex. App. 2001)(citing <u>2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.</u>, 555 N.E.2d 346, 348 (1990)).

Cotton Patch has not presented <u>evidence</u> (as distinct from conclusory allegations) of damage to physical property other than the 2006 Server.[18]  It appears that damage to "good will" could be considered to be damage to other property for purposes of the economic loss rule.  <u>Auburn Invs., Inc. v. Lyda Swinerton Builders, Inc.</u>, No. 04-08-00067-CV, 2008 WL 2923643 (Tex. App. July 30, 2008) (citing <u>Texas & P. Ry. Co. v. Mercer</u>, 90 S.W.2d 557, 560 (Tex. Comm'n App. 1936, judgm't adopted).  However, Cotton Patch has not produced <u>evidence</u> adequate to permit a reasonable fact finder to conclude that any negligence by Micros caused damage to "good will."[19]

Accordingly, the Court finds that the economic loss doctrine bars recovery on the negligence-based claims.

---

[18] In its brief, Cotton Patch claims there was physical damage to its other computers and refers to the affidavit of Alan Mann. Pl.'s Opp'n Mem. 43, ECF No. 78.  However, Mr. Mann states only that, at some point, the system did not eliminate customer credit card information, and after Micros took action to repair, the credit card data no longer appeared on receipts and batch reports.  <u>Id.</u> at Ex. 26, Aff. Mann ¶ 6.  This statement does not constitute evidence adequate to support an allegation that the 2006 Server malware physically damaged property other than the 2006 Server.

[19] Cotton Patch presents, at most, a conclusory reference to "stigma loss."  Pl.'s Opp'n Mem. 43, ECF No. 78 at Ex. 28, Aff. Marshall ¶ 9.

B.   Misrepresentation/Nondisclosure Claims

Cotton Patch alleges claims for negligent misrepresentation and fraud by nondisclosure.

1.   Threshold Issues

a.   Economic Loss Doctrine

Under Texas law, the economic loss doctrine does not bar recovery on these claims.  Sharyland, 354 S.W.3d at 418-19.

In Counts Three and Five, Cotton Patch seeks recovery for damages sustained as a consequence of reliance upon misrepresentation and nondisclosure rather than expectation damages caused by a defective product.  Thus, these claims are for damages distinct and separate from, and independent, of the "economic loss to the subject of a contract itself." Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 45-47 (Tex. 1998)(analyzing both the source of the duty and the nature of the remedy in determining a claim's characterization); Reservoir Sys., Inc. v. TGS-NOPEC Geophysical Co., L.P., 335 S.W.3d 297, 308 (Tex. App. 2010)(citing Formosa's exception to the economic loss rule).

b.   <u>Contractual Limitations</u>

Micros contends that recovery on these claims is limited by waiver clauses in the Sales Contract.  However, by these claims, Cotton Patch is not suing for contract damages and did not waive its ability to pursue tort claims that related to the Sales Contract.  The Sales Contract waiver clauses do not restrict Cotton Patch's ability to recover on these claims.


2.   <u>Negligent Misrepresentation</u>

Under Texas law, to establish a negligent misrepresentation claim, a plaintiff must prove that:

> (1)   the defendant made a representation in the course of its business, or in a transaction in which it had a pecuniary interest;
>
> (2)   the defendant supplied "false information"[20] for the guidance of others in their business;
>
> (3)   the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

---

[20] The "false information," or misrepresentation, must be an affirmative statement of existing fact, not a promise of future conduct.  <u>BCY Water Supply Corp. v. Residential Invs., Inc.</u>, 170 S.W.3d 596, 603 (Tex. App. 2005); <u>see also</u> <u>Transp. Ins. Co. v. Faircloth</u>, 898 S.W.2d 269, 276-77 (Tex. 1995)(holding that expressions of opinion are not actionable misrepresentations).

(4)   the plaintiff suffered pecuniary loss by
      justifiably relying on the representations.

General Elec. Capital Corp. v. Posey, 415 F.3d 391, 395-96 (5th
Cir. 2005); see also Horizon Shipbuilding, Inc. v. BLyn II
Holding, LLC, 324 S.W.3d 840, 850 (Tex. App. 2010).

Cotton Patch offers affidavits from Alan Mann and Larry
Marshall as evidence of negligent misrepresentation.  Pl.'s
Opp'n Ex. 26, 28.  Cotton Patch contends that Micros represented
that its software complied with payment card data security
standards, its maintenance services removed and protected
customer credit card data and kept Cotton Patch compliant, and
the systems installed were state of the art.  Further, Cotton
Patch contends that it relied on these assurances such that it
did not take necessary steps to ensure compliance resulting in
monetary fines that were incurred due to the theft of customer
credit card data.

Micros notes that Marshall's deposition testimony included
statements such as: "When I was told we were good and there is
nothing else I needed to do, that was enough for me coming from
Micros; I trusted them."  Defs.' Reply Ex. 52, Marshall Dep.
181:17-20.  Although the testimony was in the context of fixing
the inclusion of full credit card numbers on batch reports, Mr.
Marshall indicated that based on assurances from Micros, he
thought everything was fine with the batch reports or anything
else.  Id. at 180:22-24.  He also stated, however, that there

were no other occasions on which Cotton Patch made any assurances regarding security or compliance.  Id. at 194:16-22.

Micros also notes that Mr. Mann stated in his deposition: "Micros told us that they were gonna take care of the security and the updating – upgrading."  Defs.' Reply Ex. 51, Mann Dep. 173:7-8.  But Mr. Mann also stated that no one at Cotton Patch was ever given any assurances that the POS system was compliant with industry standards or that Micros would take care of security.  Id. at 170:1-171:6, 174:10-15.

Although there may be inconsistencies in some of Cotton Patch's witness statements, as demonstrated by Micros, there is evidence that reasonably could be accepted by the jury to establish that Micros represented that the software version installed on the 2006 Server did not store Full Track Data (regardless of whether such a statement indicates compliance or not with industry standards).  In addition, there is evidence that reasonably could be accepted by the jury to establish that the software installed on the 2006 Server did, at some time in 2007, store Full Track Data.  A jury could reasonably find that, as a consequence of this storage, Full Track Data was stolen, and Cotton Patch suffered pecuniary loss.

There are genuine issues of material fact regarding whether Micros was negligent in making the representation that its

software did not store Full Track Data.  If negligence is found, there could be a reasonable finding of liability on the misrepresentation-based claims.  Hence, Micros is not entitled to summary judgment on these claims.

### 3.   Fraud by Nondisclosure

Under Texas law, to establish the tort of fraud by nondisclosure, plaintiff must prove the elements of fraud[21] and must prove that:

> (1)  the defendant failed to disclose facts to the plaintiff,
>
> (2)  the defendant had a duty to disclose those facts,
>
> (3)  the facts were material,
>
> (4)  the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts,
>
> (5)  the defendant was deliberately silent when it had a duty to speak,
>
> (6)  by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting,

---

[21] That is, "(1) that a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the speaker made the representation with the intent that the other party should act upon it, (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury." Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768, 774 (Tex. 2009).

      (7)  the plaintiff relied on the defendant's
           nondisclosure, and

      (8)  the plaintiff was injured as a result of acting
           without that knowledge.

Horizon Shipbuilding, 324 S.W.3d at 850.

Cotton Patch alleges that Micros failed to disclose the presence of malicious software in the system it installed. Cotton Patch also alleges that Micros failed to disclose that the software installed in 2006 was not compliant with credit card payment security practices and that Micros' technicians were not competent in credit card compliance issues.

Micros contends that it is entitled to summary judgment on the claim because Cotton Patch has failed to present evidence adequate to permit a reasonable finding of (1) a duty to disclose the material facts allegedly not disclosed and (2) knowledge of the alleged malware on the 2006 Server.

"Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." DeLanney, 809 S.W.2d at 494. There is ample evidence to establish that Micros had a duty to make material disclosures in connection with its performance of the Sales Contract and the service contracts.

There is a factual issue as to whether the 2006 Server software installation was noncompliant with credit card industry standards.  If a jury should find noncompliance, it reasonably could find that Micros had a duty to disclose this so that Cotton Patch could take corrective action.  The jury could reasonably further find that Cotton Patch would not have known, and did not have equal opportunity to discover, this fact and reasonably relied on Micros to meet all applicable standards. Moreover, it is possible that a jury could find that Micros deliberately failed to disclose the noncompliance in order to make the sale of the 2006 Server; i.e., a reasonable fact finder could find that Micros did not disclose the fact so that Cotton Patch would not buy from a competitor.

Certainly, Micros has a reasonable contention that the damages sustained by Cotton Patch were caused by something other than any noncompliant software or malware installed in connection with the 2006 Server.  Indeed, there is evidence that could support a finding that the harm at issue was caused by Cotton Patch's own negligence and was not at all due to any fault on the part of Micros.

In addition, Micros presents reasonable defenses relating to some of the elements of the fraud by nondisclosure tort.  For example, to what extent can knowledge be attributed to Micros as

to the existence of any malware or even the extent of any
software noncompliance?[22]  Nevertheless, while Micros may well
prevail at trial, it is not entitled to summary judgment on the
nondisclosure-based claims.


C.   Texas Deceptive Trade Practices Act

To prevail on a Texas Deceptive Trade Practices Act ("Texas
DTPA"), a plaintiff must prove:

    (1)   that it was a consumer;

    (2)   that the defendant committed a false, misleading
          or deceptive act or practice as specified in the
          statute;[23]

    (3)   that it detrimentally relied on the false,
          misleading, or deceptive act or practice; and

    (4)   that the false, misleading, or deceptive act or
          practice was a producing cause of its injury.

Amstadt v. United States Brass Corp., 919 S.W.2d 644, 649 (Tex.
1996).

─────────────────────

[22] Micros contends that credit card compliance issues are beyond
the scope of server installation technicians' competence.
[23] Subsections 17.46(b)(7) and (24) of the Texas DTPA provide
that "false, misleading, or deceptive acts or practices" include
"representing that goods or services are of a particular
standard, quality, or grade, or that goods are of a particular
style or model, if they are of another" and "failing to disclose
information concerning goods or services which was known at the
time of the transaction if such failure to disclose such
information was intended to induce the consumer into a
transaction into which the consumer would not have entered had
the information been disclosed." TEX. BUS. & COM. CODE ANN. §
17.46(b)(7), (24).

The Texas DTPA expressly provides for the recovery of economic damages, including costs of repair and replacement. See TEX. BUS. & COMM. COE ANN. § 17.50(a).  Accordingly, the economic loss doctrine will not bar the claim.

Micros contends that Cotton Patch cannot establish that it was a "consumer," and therefore, lacks standing to pursue a claim under the Texas DTPA.  Whether a party is a consumer under the Texas DTPA is a question of law, but "if some of the basic ingredients of the question of consumer are in dispute, those questions should be submitted to the jury." Ridco, Inc. v. Sexton, 623 S.W.2d 792, 795 (Tex. App. 1981).

Section 17.49(g) of the Texas DTPA provides, in pertinent part:

> Nothing in this subsection shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.

Id. at § 17.49(g).[24]

---

[24] The purpose of this exemption is to maintain the Texas DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the Texas DTPA. Citizens Nat'l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 473 (Tex. App. 2004).

The total compensation paid by Cotton Patch to Micros for a series of purchases was well over $500,000 while the compensation paid for the transactions comprising the Nacogdoches POS system was less than $500,000, on the order of $60,000.

Cotton Patch contends that it never made a single decision to convert all existing restaurants to Micros POS systems and that each restaurant location was operating separately from an accounting and financial perspective.  Thus, Cotton Patch argues that the sum of sales of all the individual restaurants over ten years cannot be construed as a single "project" as defined by the Texas DTPA.  Micros disagrees.

There are genuine issues of material fact relating to the question whether the entire series of purchases by Cotton Patch from Micros "was a set of transactions relating to the same project" totaling over $500,000, or if the purchases for the Nacogdoches restaurant were for a separate project totaling less than $500,000 for Texas DTPA purposes.


IV.  <u>EVIDENTIARY MOTIONS</u>

Cotton Patch wishes the Court to strike the proffered evidence of James T. Walsh, an executive employee of Micros, from the summary judgment record and to exclude any testimony at

trial from Mr. Walsh.[25]  Cotton Patch contends that Mr. Walsh is wholly unqualified to testify as an expert on data security, and that his opinions are unreliable regarding how the security breach may have occurred, although he can testify as a fact witness.

Cotton Patch further seeks exclusion of a number of exhibits, on the basis of authentication issues or hearsay, and to strike Micros' opposition to Cotton Patch's motion to strike.

In regard to the instant motion for summary judgment the evidentiary issues are moot.  The Court would reach the same summary judgment decision with or without the evidence at issue.

In regard to the use of the evidence at trial, the motion is premature.  Cotton Patch – and Micros as well – shall have the opportunity to file motions in limine seeking exclusion of any evidence.  Motions in limine will be considered in the trial context, including such matters as the issues that will be tried, the parties' respective trial contentions, etc.

---

[25] See Sook Yoon v. Sebelius, Civil Action No. CBD-08-3173, 2010 WL 4293513, *5 (D. Md. Nov. 1, 2010)("Generally speaking, evidence must be admissible at trial in order to be considered on summary judgment.")

V.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Defendant's Motion for Summary Judgment [Document 60] as renewed by Micros Systems, Inc.'s Supplemental Memorandum Pursuant to the Court's Order of April 11, 2012 [Document 142] is GRANTED IN PART and DENIED IN PART.

   a.   Summary Judgment is granted to Defendants as to Counts Two (Negligence) and Four (Gross Negligence).

   b.   Summary Judgment is denied as to Counts One (Violations of the Texas Deceptive Trade Practices Act), Three (Negligent Misrepresentation), and Five (Fraud by Nondisclosure).

2.   Plaintiff's Motion to Exclude Expert Testimony [Document 65], Motion to Exclude Expert Testimony [Document 65], and Motions to Strike Evidence [Documents 82 and 111] as renewed by Plaintiff's Supplemental Brief in Opposition to Motion for Summary Judgment [Document 141] are DENIED AS MOOT.

3.   The case shall proceed with regard to Counts One, Three and Five.

4.   Cotton Patch shall arrange a telephone conference to be held by December 15, 2012 to discuss the scheduling of further proceedings herein.

SO ORDERED on <u>Tuesday, November 27, 2012</u>.


                                    /s/_____
                              Marvin J. Garbis
                         United States District Judge